| | |
|---|---|
| RAYMOND H. DENTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>S. BIBBS, *et al.*,<br><br>　　　　Defendants. | Case No. 1:19-cv-00316-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIM AGAINST DEFENDANTS S. BIBBS, LIEUTENANT J. ANDERSON, LIEUTENANT T. COSTA, AND ASSOCIATE WARDEN R. CHAVEZ FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF NO. 9)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

Raymond H. Denton ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On March 8, 2019, Plaintiff filed a complaint. (ECF No. 1). The Court screened the complaint and found that Plaintiff stated a cognizable claim against Defendant S. Bibbs for retaliation in violation of the First Amendment, but failed to state any other claims. (ECF No. 8). Plaintiff filed a First Amended Complaint on November 18, 2019 (ECF No. 9), which is before this Court for screening.

The Court has screened the First Amended Complaint, and finds that Plaintiff states a cognizable claim against Defendants S. Bibbs, Lieutenant J. Anderson, Lieutenant T. Costa, and Associate Warden R. Chavez for retaliation in violation of the First Amendment. The Court finds no other cognizable claims.

1

The Court recommends that these claims be allowed to proceed past the screening stage and that all other claims and defendants be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

*pro se* complaints should continue to be liberally construed after *Iqbal*).

**II.     SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff's First Amended Complaint alleges as follows:

On December 16, 2016, Plaintiff was elected Chairman of the Facility B Men's Advisory Council ("MAC") at Valley State Prison ("VSP").

The California Code of Regulations has a number of provisions governing inmate advisory councils. The Code provides in part that a disciplinary infraction shall not necessarily bar an inmate from serving as a council representative. 15 C.C.R. § 3230(b) ("An inmate's eligibility for nomination, election and retention as an inmate advisory council representative shall be limited only by the inmate's ability to effectively function in that capacity as determined by the warden…. (2) A disciplinary infraction shall not necessarily bar an inmate from serving as a council representative unless the infraction is determined by the warden to be detrimental to the council's effectiveness."). Plaintiff alleges that his disciplinary history has never met the standard for removal. Plaintiff further alleges that in 2017, correctional supervisors at VSP manipulated the classification of rules reports to unlawfully remove three executive body members from the Men's Advisory Council because of complaints against staff.

After Plaintiff was elected to the MAC, he received several complaints from the inmate population about Defendant Sergeant Bibbs. The inmates alleged that Defendant Bibbs failed to process inmates through the main yard gate in a timely manner for the law library, chapel, visiting, and mental health appointments.

On January 3, 2017, Plaintiff met with Lieutenant C. Perry and expressed the inmates' concerns regarding the main yard gate.

On February 9, 2017, Defendant Captain Speidell, Lieutenant Perry, and Sergeant Soto had a meeting with the full MAC, and Plaintiff placed the issue of Defendant Bibbs processing inmates through the main yard gate in an untimely manner up for discussion on the agenda.

After further consideration of the issue and at the request of inmate Saindon, Plaintiff, in his role as Chairman of the MAC, authorized a group appeal on behalf of the inmate population against Defendant Bibbs for her repeated failure to timely process inmates through the main yard

3

gate. Plaintiff filled out the appeal form and attached copies of the minutes that memorialized the meetings he had on this issue. He then distributed the appeal to all four housing units for signatures from the inmates. After the signatures were complete, inmate Saindon signed the appeal.

Plaintiff discussed the appeal with Defendant Speidell and he assured Plaintiff there would be no retaliation. The appeal was subsequently granted against Defendant Bibbs by Defendant Associate Warden Chavez.

On or about November 8, 2017, Plaintiff had a conversation with Defendant Bibbs. She states that she was aware that the MAC was filing an appeal against her and that she had read a copy of the appeal. Defendant Bibbs told Plaintiff to have inmate Saindon withdraw the appeal from the housing unit and not file it. Defendant Bibbs further stated "that if Plaintiff did not stop the appeal and complaining in MAC meetings regarding her it would be all bad for us because she would write us up for anything and have us removed from the Men's Advisory Council." (ECF No. 9, at p. 5). Plaintiff refused to have the appeal withdrawn.

On or about November 8, 2017, immediately after this discussion with Defendant Bibbs, Plaintiff reported her retaliatory statements to Defendant Speidell. Defendant Speidell stated that he would speak to Defendant Bibbs about her statements, and then said "BUT YOU KNOW HOW THESE THINGS CAN GO REAL FAST." (*Id.*).

On or about November 16, 2017, Plaintiff had a conversation with Defendant Chavez. Plaintiff told Defendant Chavez that Defendant Bibbs threatened to write him up for anything and have him removed from the MAC. Defendant Chavez replied, "YOU CAN'T JUST WRITE MY OFFICERS UP AND EXPECT THEM NOT TO WRITE YOU UP IN RETURN." (*Id.* at 6).

On November 22, 2017, Plaintiff and another inmate on the MAC informed the program office clerks they had a meeting in the gym with Coach Walsh to inventory equipment that was purchased by the MAC through the SB-542 fun. Plaintiff asked the program clerks to take messages if anyone called. At the time, correctional officer Espinoza let Plaintiff and the other MAC member out of the program office out of the back door.

At approximately 11:40 a.m., Defendant Bibbs came down the hall and asked the program

workers if they knew were Plaintiff was because he was late for a medical appointment. Program Clerk Jones informed her that Plaintiff was in the gym meeting with Coach Walsh. When Defendant Bibbs arrived at the main yard door, Program Clerk J. Cardenas told her again that Plaintiff was at the gym with Coach Walsh.

Defendant Bibbs then "ordered the Facility B yard to be placed on the ground and 'PRETENDED' like she did not know where Plaintiff was." (ECF No. 9, at p. 6). Defendant Bibbs then had an officer announce over the public address system to have Plaintiff report to the program office.

On December 5, 2017, Defendant Bibbs retaliated against Plaintiff by issuing him a CDCR-115 Rules Violation Report that falsely stated that the program clerks told her that they did not know where Plaintiff was on the day in question.

On December 5, 2017, Defendant Lieutenant J. Anderson retaliated against Plaintiff when he unlawfully classified the CDCR-115 disciplinary report as "serious," in violation of Title 15 C.C.R. § 3313(a) which states "Reports shall be classified as administrative or serious pursuant to sections 3314 and 3315." Plaintiff contacted Defendant Anderson and explained that he was Chairman of the Facility B MAC and that Defendant Bibbs issued Plaintiff the disciplinary report in retaliation for his use of the inmate appeals process. Plaintiff also asked for a reduction of the serious classification because delaying a peace officer is not an offense listed as serious under Title 15 § 3315. Defendant Anderson responded that he had previously talked to Defendant Bibbs and she told him that Plaintiff had plenty of time to withdraw the appeal and refused to do so. Therefore if Plaintiff is terminated it is his own fault. Defendant Anderson failed to correct the violation and was deliberately indifferent to Plaintiff's rights.

On December 30, 2017, Plaintiff appeared before Defendant Senior Hearing Officer Lt. Costa for a hearing regarding the CDCR-115 RVR. Plaintiff informed Defendant Costa that Defendant Bibbs issued the disciplinary report in retaliation for his use of the inmate appeals process against her. Plaintiff handed Defendant Costa a copy of the appeal, and she read it. Defendant Costa stated "YOU HAVE BEEN HERE LONG ENOUGH TO KNOW THAT APPEALS ARE NOT RECEIVED VERY WELL AROUND HERE AND THAT IS WHY YOU

ARE IN THIS POSITION." (ECF No. 9, at p. 7).

Plaintiff stated that the disciplinary report was wrongfully classified as serious, and asked Defendant Costa to reduce the classification to a counseling offense. Defendant Costa refused to reduce the offense, refused to call Plaintiff's witnesses, and found Plaintiff guilty of the offense.

In January, Defendant Chavez, who was the Chief Disciplinary Officer and the MAC Coordinator, approved the retaliation scheme when he reviewed the disciplinary hearing and failed to reduce the serious classification to counseling. On January 4, 2018, Defendant Chavez approved the finding of guilty from Plaintiff's disciplinary hearing.

On January 5, 2018, Defendant Chavez granted the appeal against Defendant Bibbs. Defendant Chavez thus knew about the appeal, Defendant Bibbs' retaliatory statement, and that the disciplinary report was unlawfully classified as serious, yet he failed to protect Plaintiff's constitutional rights.

On or about January 11, 2018, Plaintiff had a conversation with Defendant Warden Fisher regarding Defendant Bibbs' retaliatory statement and the filing of the false disciplinary report. Plaintiff also informed Defendant Fisher that the disciplinary report had been unlawfully classified as serious, and that Defendants Anderson, Costa, Speidell, and Chavez failed to reduce the classification. Defendant Fisher told Plaintiff to write everything down and submit the evidence to his office. Defendant Fisher assured Plaintiff that if the disciplinary report was wrongfully classified he would reduce the classification and not allow the Classification Committee to remove Plaintiff from his elected position. Plaintiff mailed Defendant Fisher a detailed letter, the disciplinary report, and the appeal on January 12, 2018.

On January 12, 2018, Defendant Speidell acquiesced in the unlawful retaliation when he temporarily removed Plaintiff from his position as MAC Chairman in violation of the MAC constitution and bylaws that state that only the warden may suspend a council member. Defendant Speidell also acquiesced in the unlawful retaliation when he failed to reduce the serious classification of the disciplinary report to a counseling chrono.

Plaintiff received the letter he had written to Defendant Fisher back on January 19, 2018.

On January 23, 2018, Plaintiff was summoned to the Facility B Program Office to appear

before Classification Committee members Defendant Speidell, R. Acosta and A. Martinez, based on Title 15 § 3315(g), which states "'Any 'SERIOUS' disciplinary action requiring reconsideration of an inmates['] program, workgroup, or housing assignment shall be referred to the next classification committee for review. The Committee[e] shall affirm or modify the inmate's program, work group, or housing assignment.'" Plaintiff informed the Committee that the disciplinary report could not form the basis for his removal as MAC chairman because it was retaliatory and unlawfully classified as a serious offense. Plaintiff also informed the Committee that he had contacted the Warden regarding the retaliation and the code of silence that were being used to remove Plaintiff from his job assignment. Defendant Speidell conveyed that the Warden was aware of all the facts and that Plaintiff was being removed from his position as MAC Chairman. The Committee acquiesced in the unlawful retaliation and removed Plaintiff from his job assignment and failed to correct the violation. Plaintiff was informed of his right to appeal.

On January 9, Plaintiff filed an appeal regarding the unlawful classification of the disciplinary report. On August 20, 2018, the appeal was granted at the third level. The Chief Deputy Warden was ordered to instruct Defendant Chavez to re-issue and re-hear the report because of a due process violation.

On September 7, 2018, Plaintiff appeared before Lieutenant J. Alvara, Senior Hearing Officer, for the re-hearing of the disciplinary report. Lieutenant Alvara reduced the offence from serious to counseling only and stated "THE SHO HAS ELECTED TO FIND DENTON GUILTY OF THE LESSER INCLUDED CHARGE OF FAILURE TO RESPOND TO NOTICES, COMMENSURATE WITH THE ORIGINAL FINDING, HOWEVER ELECTED FURTHER TO REDUCE THE CHARGE TO COUNSELING ONLY IN THE INTEREST OF JUSTICE AND DUE TO DENTON'S MINOR DISCIPLINARY HISTORY." (ECF No. 9, at p. 10).

On October 8, 2018, Plaintiff contacted Defendant Chavez by mail and requested to be reinstated as Facility B MAC Chairman based on the adjudication of the disciplinary report and Section 11.6 of the MAC bylaws. However, Defendant Chavez again refused to correct the violation and continued to approve in the retaliation scheme to remove Plaintiff from his job assignment and prevent Plaintiff's return. Defendant Chavez refused to reinstate Plaintiff because

of the disciplinary report, which was overturned on appeal.

On February 5, 2018, Plaintiff filed another appeal to be reinstated as Facility B MAC Chairman and to address the code of silence tactics that were used to remove him from his duly elected assignment. On October 25, 2018, the appeal was granted at the third level and the Chief Deputy Warden was ordered to schedule Plaintiff for the next Unit Classification Committee to re-evaluate Plaintiff's ability to participate in the MAC as Facility B Chairman.

On November 11, 2018, Plaintiff was summoned to the Facility B Program Office and appeared before R. Acosta and R. Gonzales. The hearing was supposed to address Plaintiff's reinstatement as MAC Chairman pursuant to the third level order. At the hearing, Chairman Acosta revisited the disciplinary report that was reduced from serious to a counseling chrono and refused to reinstate Plaintiff as MAC Chairman. It is important to note that at the time of this hearing Plaintiff did not have any serious disciplinary infractions that would prohibit him from serving as the Men's Advisory Council Chairman.

## III. ANALYSIS OF PLAINTIFF'S COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution

or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*,

885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and alterations omitted).

**B. Due Process Claim Based on Insufficient Procedures at Disciplinary Hearings**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *Ingraham v. Wright*, 430 U.S. 651, 672–73 (1977).

The United States Supreme Court, in a case involving a disciplinary proceeding that resulted in a punishment of thirty days in solitary confinement, provided the following guidance in determining when there is a deprivation of liberty interests such that procedural due process is required in the prison context:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life….
>
> This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, *Wolff, supra,* at 571, n. 19, 94 S.Ct., at 2982, n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976) (assuming without deciding that freedom from punitive segregation for " 'serious misconduct' " implicates a liberty interest, holding only that the prisoner has no

> right to counsel) (citation omitted), this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.
>
> Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353–68, 353–69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23–700–33(b) (effective Aug. 1992). The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record. Haw.Admin.Rule §§ 23–700–31(a), 23–700–35(c), 23–700–36 (1983). The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause. The Court rejected a similar claim in *Meachum,* 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

*Sandin v. Conner*, 515 U.S. 472, 483–87 (1995) (footnotes omitted). Thus, in *Sandin*, the Supreme Court held that neither thirty days in solitary confinement nor issuance of an RVR that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections.

To the extent that Plaintiff is entitled to due process under the legal standards discussed above, Plaintiff retains his right to due process subject to the restrictions imposed by the nature of the penal system. *Wolff*, 418 U.S. at 556. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id. Wolff* established five constitutionally mandated procedural requirements for

11

disciplinary proceedings.  First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."  *Id.* at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]."  *Id.*  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  *Id.* at 566.  And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a[n] … inmate designated by the staff."  *Id.* at 570.

Additionally, "some evidence" must support the decision of the hearing officer.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached…."  *Id.* at 455–56.

In this case, Plaintiff alleges that he was ultimately found guilty of the charge of failure to respond to notices.  He further alleges that the charge was reduced to "counseling only," in the interests of justice.  He does not allege that he suffered any additional punishment, beyond removal of his position as Chairman of the MAC.  However, counseling and a loss of the chairmanship position do not rise to the level of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. 472 ("Based on a comparison between inmates inside and outside disciplinary segregation, the state's actions in placing [Sandin] there for 30 days did not work a major disruption in his environment.").  Because Plaintiff has not alleged he was deprived of a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment to the Constitution, Plaintiff does not allege a

constitutional violation related to insufficient procedures at the disciplinary hearing.

### C. First Amendment Retaliation

A plaintiff may state a claim section 1983 for a violation of his First Amendment rights due to retaliation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges that S. Bibbs filed a false Rules Violation Report against him in retaliation for his filing a grievance against her. The filing of a false Rules Violation Report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), *aff'd*, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (citation omitted); *Harper v. Costa*, No. CIVS07-2149LKK DADP, 2009 WL 1684599, at *2–3 (E.D. Cal. June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California … have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right and (2) when the prisoner alleges that he was not afforded procedural due process in a proceeding concerning the false report. *See Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court

has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided"); *see also Ellis v. Foulk*, No. 14–cv–0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirement[]....'") (quoting *Hanrahan*, 747 F.2d at 1140).

The Court finds that Plaintiff's allegations against S. Bibbs state a claim for retaliation in violation of the First Amendment. Plaintiff alleges that "Sgt. Bibbs told Plaintiff to have MAC Saindon [] withdraw the appeal from the housing units and not [] file it. Sgt. Bibbs further stated that if Plaintiff did not stop the appeal and complaining in MAC meetings regarding her it would be all bad for us because she would write us for anything and have us removed from the Men's Advisory Council." (ECF No. 9, at p. 5). Plaintiff alleges that when he refused to withdraw the grievance, Sgt. Bibbs filed false allegations against him. Under the legal standards above, this states a claim against Defendant Bibbs for retaliation in violation of the First Amendment.

Plaintiff does not allege that any other defendant filed false allegations against him. However, he does allege retaliatory conduct.

As to Defendant Anderson, Plaintiff alleges that Defendant Anderson retaliated against Plaintiff when he unlawfully classified the CDCR-115 disciplinary report as "serious" in violation of Title 15 § 3313(a). When Plaintiff asked for a reduction in the classification, Defendant Anderson responded that he had previously talked to Defendant Bibbs and she told him that Plaintiff had plenty of time to withdraw the appeal and refused to do so. Therefore if plaintiff is terminated it is his own fault. The Court finds that these allegations are sufficient to allow Plaintiff's claim of retaliation against Defendant Anderson to proceed past the screening stage because, according to allegations of Plaintiff, Defendant Anderson improperly categorized a

charge against him and, when confronted by Plaintiff, defended his decision on the basis that Plaintiff could have withdrawn the appeal against Defendant Bibbs.  Liberally construing Plaintiff's allegations, this ties an adverse action to Plaintiff's protected conduct of filing a grievance.

As for Defendant Costa, Plaintiff alleges that she was the Senior Hearing Officer for a hearing regarding the disciplinary report filed by Defendant Bibbs.  "At that time, Plaintiff informed Lt. Costa that Sgt. Bibbs issued him the disciplinary report in retaliation for his use of the inmate appeals process against her.  Plaintiff then handed Lt. Costa a copy of the appeal and she read it.  Lt. Costa stated: 'YOU HAVE BEEN HERE LONG ENOUGH TO KNOW THAT APPEALS ARE NOT RECEIVED VERY WELL AROUND HERE AND THIS IS WHY YOU ARE IN THIS POSITION.'"  (ECF No. 9, at p. 7).  Defendant Costa refused to reduce the classification to a counseling offense, refused to call Plaintiff's witnesses, and found Plaintiff guilty.  The Court finds that these allegations are sufficient to allow Plaintiff's claim of retaliation against Defendant Costa to proceed past the screening stage.  Liberally construing Plaintiff's allegations, Plaintiff has alleged that T. Costa took adverse actions against him in violation of the rules, and also that Defendant Costa explicitly stated that Plaintiff was in this position because he had filed an appeal against Defendant Bibbs.

As for Defendant Speidell, Plaintiff alleges that he discussed the appeal with Captain Speidell, who assured Plaintiff there would be no retaliation.  Plaintiff told Defendant Speidell about Defendant Bibbs' threat, and Defendant Speidell stated that he would speak to Defendant Bibbs about her statements, and then said "BUT YOU KNOW HOW THESE THINGS CAN GO REAL FAST." (*Id.* at 5).  He alleges that Defendant Speidell was among those who refused to reduce the classification from serious.  Defendant Speidell also allegedly acquiesced in the unlawful retaliation when he temporarily removed Plaintiff from his position as MAC Chairman.  Defendant Speidel was also part of the Classification Committee who removed Plaintiff from the Chairmanship improperly.  Notably Defendant Speidell was not part of the Committee that refused to reinstate the chairmanship after Plaintiff's appeal had been granted.  The Court finds that these allegations are insufficient to state a claim for retaliation against Defendant Speidell.

There is not a sufficient connection between Defendant Speidell's actions and Plaintiff's grievance against Defendant Bibbs.  Even taking Plaintiff's allegations as true, Defendant Speidell did not endorse retaliation.  And Defendant Speidell was not part of the group who refused to reinstate Plaintiff despite the direction from the third level.

As to Defendant Chavez, Plaintiff alleges that he told Defendant Chavez that Defendant Bibbs threated to write him up if he did not stop complaining about her and withdraw the appeal against her.  Defendant Chavez allegedly replied "YOU CAN'T JUST WRITE MY OFFICERS UP AND EXPECT THEM NOT TO WRITE YOU UP IN RETURN." (*Id.* at 6).  Plaintiff alleges that Defendant Chavez refused to reduce the serious classification of the offense.  Also, Plaintiff spoke with Defendant Chavez regarding Defendant Bibbs retaliatory statement in November of 2017, the appeal was assigned to his office on December 7, 2017, he approved the finding of Plaintiff's guilt on January 4, 2018, and he granted the appeal against Defendant Bibbs on January 5, 2018.  After Plaintiff's violation was reduced from serious to counseling, Plaintiff contacted Defendant Chavez and requested reinstatement as Facility B MAC Chairman based on the adjudication of the disciplinary report.  Defendant Chavez refused to reinstate Plaintiff because of the disciplinary report, which was overturned on appeal.  When Plaintiff appealed Defendant Chavez's refusal to reinstate him, the third level appeals office granted the appeal and ordered reevaluation of his Chairmanship.  Plaintiff was not reinstated, although Defendant Chavez was not listed as part of the Classification Committee at this time.  Although these facts are not entirely clear as to the extent of Defendant Chavez's participation, the Court will allow Plaintiff's claim of retaliation to proceed against Defendant Chavez because Defendant Chavez allegedly took adverse actions against Plaintiff in violation of the rules, allegedly stated "YOU CAN'T JUST WRITE MY OFFICERS UP AND EXPECT THEM NOT TO WRITE YOU UP IN RETURN," and failed to reinstate Plaintiff after direction from the third level appeals office.

As to Defendant Fisher, the Warden and Chief Executive Officer at VSP, Plaintiff alleges that he told Defendant Fisher about Defendant Bibbs' retaliation and the unlawfully classification.  Warden Fisher told Plaintiff to write everything down and submit the evidence to his office.  Warden Fisher assured Plaintiff that if the disciplinary report was wrongfully classified, he would

reduce the classification and not allow the Classification Committee to remove Plaintiff from his position. Plaintiff mailed Warden Fisher a detailed letter, the disciplinary report, and the appeal. Plaintiff received the letter back a few days later. Later, Defendant Speidell conveyed that the Warden was aware of all the facts and that Plaintiff was being removed from his position as MAC Chairman. The Court finds that these facts are not sufficient to state a claim against Warden Fisher. There are no allegations showing that Warden Fisher's failure to intervene was due to retaliatory motives. Moreover, there are no allegations showing that he was directly involved in these actions, rather than acting in his supervisory capacity.

### IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint, and finds that Plaintiff states a claim against Defendants S. Bibbs, Lieutenant J. Anderson, Lieutenant T. Costa, and Associate Warden R. Chavez for retaliation in violation of the First Amendment. The Court also finds that Plaintiff has failed to state any other cognizable claims.

The Court does not recommend granting further leave to amend because the Court provided Plaintiff with an opportunity to amend his complaint with the benefit of the legal standards above, and Plaintiff filed his first amended complaint with the guidance of those legal standards. It appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's claim against Defendants S. Bibbs, Lieutenant J. Anderson, Lieutenant T. Costa, and Associate Warden R. Chavez for retaliation in violation of the First Amendment; and

2. All other claims and defendants be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the

waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 2, 2020**

/s/ *Erin P. Grosj*
UNITED STATES MAGISTRATE JUDGE