UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND H. DENTON,<br><br>            Plaintiff,<br><br>     v.<br><br>S. BIBB, et al.,<br><br>            Defendants. | Case No. 1:19-cv-00316-ADA-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED, THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, AND THAT PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE BE GRANTED IN PART AND DENIED IN PART<br><br>(ECF Nos. 78, 88, & 89)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.      INTRODUCTION

Raymond Denton ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This case is proceeding on Plaintiff's claims against Defendants S. Bibb,[1] Lieutenant J. Anderson, Lieutenant T. Costa, and Associate Warden R. Chavez ("Defendants") for retaliation in violation of the First Amendment.  (ECF Nos. 11 & 16).  Plaintiff alleges that these defendants retaliated against him for filing (or assisting in filing) a grievance against Defendant Bibb.  (ECF No. 9).

On October 18, 2022, Defendants filed a motion for summary judgment.  (ECF No. 78).  On January 24, 2023, Plaintiff filed a motion for summary judgment, along with a request for

---

[1] While Plaintiff refers to Defendant "Bibbs," according to Defendants, the proper spelling is "Bibb" (<u>see, e.g.,</u> ECF No. 34 p. 1).

1

judicial notice.  (ECF Nos. 89 & 88).[2]  On March 16, 2023, Defendants filed their objections to Plaintiff's request for judicial notice and their opposition to Plaintiff's motion for summary judgment.  (ECF Nos. 92 & 93).[3]  Both motions for summary judgment, as well as Plaintiff's request for judicial notice, are now before the Court.

For the reasons that follow, the Court will recommend that Defendants' motion for summary judgment be denied, that Plaintiff's motion for summary judgment be denied, and that Plaintiff's request for judicial notice be granted in part and denied in part.

## II.    CLAIMS AT ISSUE

This case is proceeding on Plaintiff's claims against defendants Bibb, Anderson, Costa, and Chavez for retaliation in violation of the First Amendment.  (ECF Nos. 11 & 16).

In allowing the claims to proceed, the Court found as follows:

> The Court finds that Plaintiff's allegations against S. Bibbs state a claim for retaliation in violation of the First Amendment.  Plaintiff alleges that "Sgt. Bibbs told Plaintiff to have MAC ["Men's Advisory Council"] Saindon [] withdraw the appeal from the housing units and not [] file it. Sgt. Bibbs further stated that if Plaintiff did not stop the appeal and complaining in MAC meetings regarding her it would be all bad for us because she would write us for anything and have us removed from the Men's Advisory Council." (ECF No. 9, at p. 5).  Plaintiff alleges that when he refused to withdraw the grievance, Sgt. Bibbs filed false allegations against him…. [T]his states a claim against Defendant Bibbs for retaliation in violation of the First Amendment.
>
> …
>
> As to Defendant Anderson, Plaintiff alleges that Defendant Anderson retaliated against Plaintiff when he unlawfully classified the CDCR-115 disciplinary report as "serious" in violation of Title 15 § 3313(a).  When Plaintiff asked for a reduction in the classification, Defendant Anderson responded that he had previously talked to Defendant Bibbs and she told him that Plaintiff had plenty of time to withdraw the appeal and refused to do so.  Therefore if [P]laintiff is terminated it is his own fault.  The Court finds that these allegations are sufficient to allow Plaintiff's claim of retaliation against Defendant Anderson to

---

[2] The Court will treat Plaintiff's motion for summary judgment as also being an opposition to Defendants' motion for summary judgment.

[3] Defendants' opposition to Plaintiff's motion for summary judgment is also their reply to Plaintiff's opposition to their motion for summary judgment.  (ECF No. 93, p. 1 n.1).  While the Court will consider arguments and evidence in the opposition as to why Plaintiff's motion should be denied, the Court will not consider any new arguments as to why Defendants' motion should be granted.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

proceed past the screening stage because, according to allegations of Plaintiff, Defendant Anderson improperly categorized a charge against him and, when confronted by Plaintiff, defended his decision on the basis that Plaintiff could have withdrawn the appeal against Defendant Bibbs.  Liberally construing Plaintiff's allegations, this ties an adverse action to Plaintiff's protected conduct of filing a grievance.

As for Defendant Costa, Plaintiff alleges that she was the Senior Hearing Officer for a hearing regarding the disciplinary report filed by Defendant Bibbs.  "At that time, Plaintiff informed Lt. Costa that Sgt. Bibbs issued him the disciplinary report in retaliation for his use of the inmate appeals process against her. Plaintiff then handed Lt. Costa a copy of the appeal and she read it.  Lt. Costa stated: 'YOU HAVE BEEN HERE LONG ENOUGH TO KNOW THAT APPEALS ARE NOT RECEIVED VERY WELL AROUND HERE AND THIS IS WHY YOU ARE IN THIS POSITION.'"  (ECF No. 9, at p. 7).  Defendant Costa refused to reduce the classification to a counseling offense, refused to call Plaintiff's witnesses, and found Plaintiff guilty.  The Court finds that these allegations are sufficient to allow Plaintiff's claim of retaliation against Defendant Costa to proceed past the screening stage.  Liberally construing Plaintiff's allegations, Plaintiff has alleged that T. Costa took adverse actions against him in violation of the rules, and also that Defendant Costa explicitly stated that Plaintiff was in this position because he had filed an appeal against Defendant Bibbs.

…

As to Defendant Chavez, Plaintiff alleges that he told Defendant Chavez that Defendant Bibbs threated to write him up if he did not stop complaining about her and withdraw the appeal against her.  Defendant Chavez allegedly replied "YOU CAN'T JUST WRITE MY OFFICERS UP AND EXPECT THEM NOT TO WRITE YOU UP IN RETURN."  (*Id.* at 6).  Plaintiff alleges that Defendant Chavez refused to reduce the serious classification of the offense.  Also, Plaintiff spoke with Defendant Chavez regarding Defendant Bibbs retaliatory statement in November of 2017, the appeal was assigned to his office on December 7, 2017, he approved the finding of Plaintiff's guilt on January 4, 2018, and he granted the appeal against Defendant Bibbs on January 5, 2018.  After Plaintiff's violation was reduced from serious to counseling, Plaintiff contacted Defendant Chavez and requested reinstatement as Facility B MAC Chairman based on the adjudication of the disciplinary report.  Defendant Chavez refused to reinstate Plaintiff because of the disciplinary report, which was overturned on appeal. When Plaintiff appealed Defendant Chavez's refusal to reinstate him, the third level appeals office granted the appeal and ordered reevaluation of his Chairmanship.  Plaintiff was not reinstated, although Defendant Chavez was not listed as part of the Classification Committee at this time.  Although these facts are not entirely clear as to the extent of Defendant Chavez's participation, the Court will allow Plaintiff's claim of retaliation to proceed against Defendant Chavez because Defendant Chavez allegedly took adverse actions against Plaintiff in violation of the rules, allegedly stated "YOU CAN'T JUST WRITE

MY OFFICERS UP AND EXPECT THEM NOT TO WRITE YOU UP IN RETURN," and failed to reinstate Plaintiff after direction from the third level appeals office.

(ECF No. 11, pgs. 14-16; ECF No. 16).[4]

All other claims and defendants were dismissed at screening.  (ECF Nos. 11 & 16).

## III.   MOTIONS FOR SUMMARY JUDGMENT

### a.   Defendants' Motion (ECF No. 78)

Defendants filed a motion for summary judgment on October 18, 2022.  (ECF No. 78).  Defendants move for summary judgment on the grounds that they did not retaliate against Plaintiff, that Plaintiff "successfully sought and received an administrative remedy for whatever mistake Defendants may have made during that disciplinary process," and that they are entitled to qualified immunity.  (Id. at 7).

As to their argument that they did not retaliate against Plaintiff, Defendants admit that Plaintiff was disciplined, but argue that "[u]nder then governing prison regulations, Plaintiff's failure to be at his assigned programming area to timely attend a scheduled medical appointment on November 22, 2017 constituted a valid reason for Defendants to discipline him.  Relevant evidence affirms that Defendants lawfully acted when they issued, classified, and found Plaintiff guilty of a rules violation."  (Id. at 12).  "Plaintiff's disregard for the regulations and rules aimed at ensuring institutional security gave rise to Bibb's rules violation report and the related subsequent events, not his group inmate appeal filed against Bibb."  (Id. at 13).

Defendants further argue that the discipline "advanced a legitimate penological interest."  (Id.).  "Title 15, section 3274(b)(2), which required [Plaintiff] to either have an inmate pass or a staff escort for any and all unscheduled inmate movement," "clearly sought to promote institutional security."  (Id.).  And here, Plaintiff failed to attend his medical appointment, and when defendant Bibb could not locate Plaintiff, "she immediately informed another officer to put Facility B yard down and tried to locate Plaintiff."  (Id.).  There is no evidence that Plaintiff had permission to leave his assigned programming area, and "because of Plaintiff's unexcused absence, custody staff had to put his assigned programming area down

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

and delay all programming because Plaintiff failed to timely show up for his medical appointment without telling any staff on his whereabouts." (Id. at 14). Moreover, "other staff had given Plaintiff verbal counseling on several occasions for his failure to tell his supervisors of his whereabouts." (Id.).

Defendants also argue that Plaintiff is incorrect that "delaying a peace officer in performance of duties did not qualify as a serious rules violation under the 2017 Title 15, section 3315." (Id.). Plaintiff's behavior qualifies as a serious rule violation pursuant to California Code of Regulations, Title 15, § 3315(2)(B)-(C). (Id.). "Costa and Chavez's guilty finding for Plaintiff, based on the preponderance of evidence, sought to both punish and deter Plaintiff from continuing to commit serious rules violations, a fact that the headquarters appeals examiners affirmed." (Id.).

Next, Defendants argue that they are entitled to summary judgment because, "[e]ven if Defendants made some mistake in disciplining Plaintiff, the prison administrative remedy system fully and appropriately remedied Plaintiff's grievance against them." (Id. at 15). Plaintiff filed an appeal regarding the Rules Violation report, requesting "that the reviewing authority remove the serious classification and reduce it to verbal counseling, or alternatively, order a rehearing." (Id.). Plaintiff's appeal was granted in part, a rehearing was ordered, and at the rehearing the Rules Violation Report was reduced to counseling only. (Id. at 15-16).

Plaintiff also filed an appeal "to complain about Defendants' alleged retaliation and the classification committee's decision to remove Plaintiff as the MAC chairman at the January 23, 2018 classification committee meeting," and sought to be reinstated as the MAC Chairman. (Id. at 16). Plaintiff's appeal was granted in part, and Valley State Prison was directed "to schedule Plaintiff for the next available UCC in order for committee to re-evaluate [Plaintiff's] ability to participate in the MAC as the Facility B chairman." (Id.) (alteration in original) (citation and internal quotation marks omitted). While Plaintiff was not reinstated, "Defendants' conduct regarding the December 2017 rules violation report ceased to have any adverse effect on Plaintiff's eligibility to serve on the MAC after the third level decisions." (Id.). Instead, the committee that was responsible, which Defendants did not serve on,

"memorialized its decision to not reinstate Plaintiff as the MAC chairman based on an independent assessment of Plaintiff's problematic behavior history." (Id. at 16-17).

Finally, Defendants argue that they are entitled to qualified immunity. (Id. at 17). Defendants argue that they did not violate Plaintiff's constitutional rights and that Plaintiff did not have "a clearly established right to be free from prison officials' disciplinary actions when he violated prison regulations or policies. In fact, correctional staff may discipline prisoners in different ways if the circumstances justify them." (Id. at 18).

In support of their motion for summary judgment, Defendants submit excerpts from the transcript of the deposition of Plaintiff, including an attached "Offender Appointments" list.[5]

### b.   Plaintiff's Motion for Summary Judgment (ECF No. 89)

On January 24, 2023, Plaintiff filed a motion for summary judgment, along with a request for judicial notice. (ECF Nos. 89 & 88).

Plaintiff alleges that he "submitted complaints and an appeal against Defendant Bibb." (ECF No. 89, p. 1). Defendant Bibb then retaliated against Plaintiff by manufacturing a security breach to pretend that Plaintiff was missing. (Id. at 3). She then issued a false disciplinary report that alleged that the program workers did not tell her that Plaintiff was meeting with the Coach in the gym, even though she was told that Plaintiff was in the gym prior to the alleged security breach. (Id.).

Plaintiff alleges that Defendant Anderson falsely classified the disciplinary report as "serious," in violation of California Code of Regulation Title 15, § 3313(a). (Id.). Plaintiff was charged with Delaying a Peace Officer, which is not a "serious" offense. (Id.). Defendant Anderson should have reduced the classification after Plaintiff contacted him, but he refused to do so. (Id.). Additionally, Plaintiff could not have been charged with Delaying a Peace Officer in violation of California Penal Code § 148. (Id.). Defendant Bibb was not performing a lawful duty, because she knew exactly where Plaintiff was when she falsely alleged that he was missing. (Id.). Additionally, because Plaintiff accidently missed his medical appointment, he

---

[5] In their motion Defendants reference other exhibits that were supposedly attached to the transcript, but they did not submit a copy of any other exhibits with their motion for summary judgment.

did not willfully resist, delay, or obstruct Defendant Bibb in the performance of her duties.  (Id. at 5).

Plaintiff alleges that, on December 30, 2017, he appeared before Defendant Costa for a hearing on the disciplinary report.  (Id.).  Defendant Costa read Plaintiff's appeal.  (Id.).  She also refused to call Plaintiff's witnesses, who told Defendant Bibb exactly where Plaintiff was prior to the manufactured security breach.  (Id.).  Because Defendant Bibb called the gym officer within minutes of the alarm and Plaintiff reported without delay, she changed the charge from Delaying a Peace Officer to Failure to Respond to Notices, and found Plaintiff guilty of that charge.  (Id.).  Failure to Respond to Notices is not a "serious" offense listed under Title 15, § 3315.  (Id.).  Additionally, the finding of guilt violated the Health Care Department Operations Manual, which states that a refusal to report should be documented on a Rules Violation Report.  (Id.).  However, Plaintiff was not accused of refusing to report to medical. (Id.).  Plaintiff alleges that Defendant Costa "clearly" acquiesced in the unconstitutional retaliation.

Plaintiff alleges that Defendant Chavez acquiesced in the unlawful retaliation when he told Plaintiff, "YOU CAN[']T JUST WRITE MY OFFICERS UP AND EXPECT THEM NOT TO WRITE YOU UP IN RETURN."  (Id. at 6).  Defendant Chavez approved the guilty finding, even after being placed on notice of Defendant Bibb's retaliatory statements and intention to remove Plaintiff from the MAC.  (Id.).  Additionally, after the guilty finding was overturned, defendant Chavez refused to reinstate Plaintiff as Chairman of the MAC.  (Id.).

Finally, Plaintiff argues that Defendants are not entitled to qualified immunity.  (Id. at 7).[6]

In support of his motion, Plaintiff submits among other things: his declaration; appeals and responses to appeals; a declaration from inmate Lafayette Jones; a Rules Violation Report; the hearing results from the Rules Violation Report; a Classification Committee Chrono;

---

[6] In his motion for summary judgment, Plaintiff argues that Defendants violated California Penal Code § 13510.8.  (ECF No. 89, pgs. 6-7).  Plaintiff does not explain, nor is it clear, how this is relevant to this case, and the Court will not address it.  Nor will the Court will not forward his case to the Attorney General's Civil Rights Division or the Peace Officer Standards Accountability Division.

disciplinary hearing results from the rehearing on the Rules Violation Report; an Inmate

Request Form sent to Defendant Chavez; and a declaration from inmate Michael McNelly.

Additionally, he asks the Court to take judicial notice of In re Scott, 113 Cal. App. 4th 38

(2003), as well as Rules Violation Reports issued to different inmates for Failure to Respond to

Notices that were classified as "Counseling Only."  (ECF No. 88).

> c. <u>Defendants' Opposition to Plaintiff's Motion for Summary Judgment (ECF No.
> 93)</u>

On March 16, 2023, Defendants filed their opposition to Plaintiff's motion for summary

judgment,[7] along with their objections to Plaintiff's request for judicial notice.  (ECF Nos. 93 &

92).

Defendants argue that Plaintiff's motion for summary judgment should be denied and

theirs should be granted.  (ECF No. 93, p. 2).  "Plaintiff fails to show undisputed material facts

that support he is entitled to judgment as a matter of law on his First Amendment retaliation

claim.  Moreover, the cross-motion fails to adequately oppose Defendants' summary-judgment

motion because Plaintiff's evidence does not refute Defendants' material facts showing

Defendants' disciplinary actions at issue here conformed with the relevant prison regulations

and reasonably related to legitimate penological interests."  (Id.).  Defendants argue that their

evidence establishes that "Defendants disciplined Plaintiff to uphold institutional security, deter

Plaintiff's future unruly behavior, and enforce valid state prison regulations, rather than in

retaliation to filing inmate appeals against Defendant Bibb."  (Id. at 3-4).  Defendants also

argue that they are entitled to qualified immunity.  (Id. at 5-6).  Accordingly, Defendants argue

that their motion should be granted and Plaintiff's should be denied.  (Id. at 7).

In support of their opposition, Defendants submit among other things: the declaration of

Defendant Bibb; the declaration of Defendant Anderson; the declaration of Defendant Costa;

and the declaration of M. Santoya, a Correctional Lieutenant.

\\\

---

[7] As noted above, Defendants' opposition to Plaintiff's motion for summary judgment is also their reply
to Plaintiff's opposition to their motion for summary judgment.

**IV.   DISCUSSION**

a.  Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted.").  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.  Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de

<u>Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).  It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact.  <u>Celotex</u>, 477 U.S. at 330 n. 2 (citation omitted).  Additionally, "[t]he evidence of the non-movant is to be believed…."  <u>Anderson</u>, 477 U.S. at 255

        b.  <u>Legal Standards for Retaliation in Violation of the First Amendment</u>

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' *Brodheim*, 584 F.3d at 1269, that is 'more than minimal,' *Robinson*, 408 F.3d at 568 n.11.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  *Id.* at 569."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

While prisoners have no freestanding right to a prison grievance process, <u>see</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995), <u>overruled on other grounds by</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 230 n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  <u>Rhodes</u>, 408 F.3d at 567.

        c.  <u>Legal Standards for Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.  Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'"  Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

> d.   Plaintiff's Request for Judicial Notice

The Court will recommend that Plaintiff's request for judicial notice be granted in part and denied in part.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts "may take judicial notice of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Plaintiff asks the Court to take judicial notice of In re Scott, 113 Cal. App. 4th 38, as well as Rules Violation Reports issued to different inmates for Failure to Respond to Notices that were classified as "Counseling Only."  While Plaintiff includes arguments as to why this evidence is relevant, he does not explain how the facts are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Additionally, there is nothing before the Court suggesting that the Rules Violation Reports provided by Plaintiff are public record, and according to Defendants, they are not.  (ECF No. 92, p. 2 ("[N]either the report, nor the facts described therein, are public records under the pertinent regulations.") (citing Title 15, § 3261.2(e)).  Accordingly, the Court recommends that Plaintiff's request for judicial notice be denied as to these Rules Violation Reports.

As to <u>In re Scott</u>, 113 Cal. App. 4th 38, the Court will recommend that judicial notice be taken of the existence of this case, but not for the truth of the facts cited in the case.  <u>See, e.g.</u>, <u>Clark v. Citizens of Human., LLC</u>, 97 F. Supp. 3d 1199, 1202 (S.D. Cal. 2015) ("While a court may take judicial notice of the existence of matters of public record, such as a prior order or decision, it should not take notice of the truth of the facts cited therein.") (citation and internal quotation marks omitted).

> e.   <u>Analysis</u>

The Court next turns to the parties' summary judgment motions.  The Court finds that there are genuine disputes of material fact that preclude summary judgment against all parties.

> i.   *Defendants' Motion for Summary Judgment*

Defendants move for summary judgment, in part, on the ground that they did not take an adverse action against Plaintiff for engaging in protected conduct and because their actions advanced a legitimate penological interest.  (<u>See</u> ECF No. 78, p. 13).  However, the Court finds that Plaintiff's evidence creates genuine disputes of material fact regarding these issues.

According to Plaintiff's evidence, which the Court must accept as true and construe in the light most favorable to Plaintiff when ruling on Defendants' motion for summary judgment, Plaintiff authorized an appeal against Defendant Bibb, "filled out the appeals form, and distributed the appeal throughout [] the Facility B Housing Units." (ECF No. 89, p. 20).  On or around November 8, 2017, Defendant Bibb told Plaintiff that she was aware of the appeal, and told Plaintiff to have inmate Saindon withdraw it from the housing units and to not file it.  (<u>Id.</u>).  Defendant Bibb also stated that "if Plaintiff did not stop the appeal and complaining in MAC Meetings regarding her it will be all bad for [them] because she would write Plaintiff and Saindon up for anything and have [them] removed from the Men's Advisory Council."  (<u>Id.</u> at 20-21).  The appeal was not withdrawn.  (<u>See id.</u> at 20 & 56).

"On or about November 16, 2017, Plaintiff had a conversation with Defendant Chavez." (<u>Id.</u> at 21).  Plaintiff told Defendant Chavez about Defendant Bibb's threat, and Defendant Chavez responded, "YOU CAN'T JUST WRITE MY OFFICERS UP AND EXPECT THEM NOT TO WRITE YOU UP IN RETURN."  (<u>Id.</u>).

On November 22, 2017, Plaintiff had a meeting at the gym, and he asked the clerks to take messages if anyone from the administration called.  (Id. at 21).  Correctional Officer Espinoza then let Plaintiff out the back door.  (Id.)  Defendant Bibb eventually came looking for Plaintiff, and asked inmates where Plaintiff was.  (ECF No. 93-3, p. 2).  At least one inmate informed Defendant Bibb that Plaintiff was at the gym.  (ECF No. 89, p. 59).  However, despite being informed of Plaintiff's location, she pretended Plaintiff was missing and locked down the yard.  (Id. at 21-22, 59, & 63).  She then called the gym officer and told him to have Plaintiff report back to the program office, which Plaintiff did.  (Id. at 22 & 63).  She then told Plaintiff to report for his medical ducat, and Plaintiff complied.  (Id. at. 22).  On December 5, 2017, she wrote a disciplinary report based on this incident that included the false allegation that the program clerks told her that they did not know where Plaintiff was.  (Id. at 21-22, 59, & 63).  Plaintiff was charged with Delaying a Peace Officer in the Performance of Duties.  (Id. at 63).

On that same day, Defendant Anderson classified the Rules Violation Report as serious.  (Id. at 23 & 63-64).  "Plaintiff contacted Defendant Anderson and explained that the disciplinary report was retaliatory and requested that Defendant Anderson correct the classification.  At that time Defendant Anderson informed Plaintiff that he had spoke[n] to Defendant Bibb and she told him that Plaintiff had plenty of time to withdraw the appeal and refused to do so.  Therefore if Plaintiff is terminated it is his own fault."  (Id. at 22).  Defendant Anderson did not change the classification.  (Id. at 22 & 67).

On December 30, 2017, Plaintiff appeared before Defendant Costa for a hearing regarding the Rules Violation Report.  (Id. at 23).  "Plaintiff informed Defendant Costa that Defendant Bibb issued the report in retaliation for his use of the inmate appeals process against her," and Plaintiff gave Defendant Costa a copy of the appeal.  (Id.).  Defendant Costa read it, then stated, "YOU HAVE BEEN HERE LONG ENOUGH TO KNOW THAT APPEALS ARE NOT RECEIVED VERRY [sic] WELL AROUND HERE AND THAT'S WHY YOU ARE IN THIS POSITION."  (Id.).  Defendant Costa "informed Plaintiff that she was not going to call his witnesses because the evidence did not support the charge of 'DELAYING A PEACE OFFICER....'"  (Id.).  Instead, she found Plaintiff guilty of Failure to Respond to Notices in

violation of Title 15, § 3014, but kept the serious classification.  (Id. at 23 & 73).

"On January 4, 2018, Defendant Chavez approved the finding of Guilt from the Disciplinary Hearing…."  (Id. at 23 & 75).

On or around January 23, 2018, Plaintiff was removed as MAC Chairman because he was found guilty of a serious Rules Violation Report.  (Id. at 23-24 & 77; Plaintiff's Separate Statement of Undisputed Material Facts, ¶ 1).

On September 7, 2018, the Rules Violation Report was reheard by Lieutenant Alvara, who also found Plaintiff guilty of Failure to Respond to Notices, but "elected to further reduce the charge to COUNSELING ONLY, in the interest of justice and due to DENTON'S minor disciplinary history."  (ECF No. 89, pgs. 89-97); (see also id. at 24).

Accordingly, there is evidence that Defendant Bibb threatened to write Plaintiff up and get him removed from the MAC if he did not withdraw an appeal he wrote (or assisted in writing) against her.  The appeal was not withdrawn, and less than a month after Defendant Bibb's threat, she wrote Plaintiff up and falsely stated that she did not know where Plaintiff was when she locked down the yard.  Thus, there is evidence in the record from which a fair-minded jury could reasonably find that Defendant Bibb took an adverse action against Plaintiff (writing Plaintiff up) because he engaged in protected conduct (writing/assisting in writing a grievance, and refusing to withdraw it).  Moreover, given the evidence of retaliation, as well as the inclusion of false information, a fair-minded jury could reasonably find that it was the desire to retaliate against Plaintiff, not institutional security or another legitimate interest, that led to Defendant Bibb writing Plaintiff up.

Additionally, there is evidence Defendants Anderson (a correctional lieutenant (ECF No. 93-4, p. 2)), Costa (a correctional lieutenant (ECF No. 93-5, p. 2)), and Chavez (an associate warden (ECF No. 78, p. 8)) were all informed of Defendant Bibb's behavior. However, they did not investigate or deny that Defendant Bibb retaliated against Plaintiff. Instead, all three stated in one form or another that Plaintiff should expect to be retaliated against because he chose to write/assisted in writing a grievance, and refused to withdraw it.

Accordingly, there is evidence that these defendants acquiesced in the constitutional violation.[8]

Moreover, there is evidence that each of these defendants also directly participated in the violation. According to Plaintiff, Defendant Anderson misclassified the report as serious, Defendant Costa found Plaintiff guilty of the lesser included charge of Failure to Respond to Notices but left the classification as serious, and Defendant Chavez approved the finding of guilt.

The Court next addresses the parties' arguments regarding how the Rules Violation Report should have been classified. The Court has reviewed California Code of Regulations, Title 15, §§ 3313, 3314, and 3315, and the parties' dispute of fact as to the underlying events appears to affect whether the Rules Violation Report should have been classified as administrative or serious. According to the regulations, "[a]dministrative rule violations include but are not limited to: … (C) Out-of-bounds presenting no threat to facility security…. (G) Late for or absent without authorization from a work or program assignment." Cal. Code Regs. tit. 15, § 3314(a)(3)(C), (G) (2017). And, a Rules Violation Report can be classified as serious when: "It involves any one or more of the following circumstances: … (B) A breach of or hazard to facility security. (C) A serious disruption of facility operations." Cal. Code Regs. tit. 15, § 3315(a)(2)(B)-(C) (2017). Here, Plaintiff presents at least some evidence that he was not a hazard to facility security, and that Defendant Bibb did not activate the alarm until after she knew where Plaintiff was. Conversely, as discussed in more detail below, Defendants have presented evidence that Plaintiff's conducted presented a threat to security. Moreover, Defendants have discretion in how to classify a Rules Violation Report. See Wise v. Marshall, 2010 WL 532406, at *4 (C.D. Cal. Feb. 11, 2010) (noting that Rules Violation Reports are

---

[8] Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). However, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

classified as either administrative or serious, and finding that "state regulations afford prison officials a great deal of discretion in deciding how to address problematic behavior"); Pina v. Diggle, 2014 WL 5872816, at *2 (N.D. Cal. Nov. 12, 2014) ("State regulations afford prison officials a great deal of discretion in determining how to address inmate misconduct.").

However, there is some evidence from which a fair-minded jury could reasonably find that Defendants utilized their discretion to retaliate against Plaintiff.   As discussed above, there is evidence that each of these defendants was informed about Defendant Bibb's behavior, but in essence stated that Plaintiff should expect to be retaliated against because he chose to write/assisted in writing a grievance and did not have it withdrawn.  Additionally, the original charge was reduced to Failure to Respond to Notices, but left as serious.  (ECF No. 89, p. 71). Finally, upon appeal and re-hearing by a non-defendant, the charge was further reduced from serious to counseling only.  (Id. at 24 & 95).

Moreover, under clearly established Ninth Circuit law, Plaintiff's evidence of retaliatory motive is sufficient to defeat Defendants' argument that Plaintiff's retaliation claims fail because they had legitimate correctional goals.  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) ("It is clear, and Bruce concedes, that prisons have a legitimate penological interest in stopping prison gang activity.  But, if, in fact, the defendants abused the gang validation procedure as a cover or a ruse to silence and punish Bruce because he filed grievances, they cannot assert that Bruce's validation served a valid penological purpose, even though he may have *arguably* ended up where he belonged….  This comports with other circuits holding that prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.") (citations omitted); Shepard v. Quillen, 840 F.3d 686, 692 (9th Cir. 2016) ("As *Bruce* recognized, a prison official who uses a valid procedure as subterfuge to obscure retaliation cannot assert that [his action] served a valid penological purpose, even though [the prisoner] may have arguably ended up where he belonged.") (alterations in original) (citation and internal quotation marks omitted); Johnson v. Ryan, 55 F.4th 1167, 1202 (9th Cir. 2022) ("As in *Bruce*, even if

[Plaintiff] arguably ended up where he belonged, the presence of a genuine dispute of material fact with respect to a retaliatory motive means that Defendants' general justification for the action is not sufficient to defeat summary judgment.") (citation and internal quotation marks omitted); Barnett v. Gipson, 2022 WL 16860276, at *11 (C.D. Cal. Feb. 10, 2022) ("Defendants argue that the actions Plaintiff alleges serve straightforward and legitimate correctional goals . . . .  Taken in isolation, Defendants' argument would succeed; the facial validity of prison officials investigating allegations of wrongful conduct or issuing violations for wrongful conduct is not in dispute.  However, accepting all facts alleged in the SAC as true and drawing all reasonable inferences in favor of Plaintiff, as this Court must at this juncture, the alleged actions by Defendant Richey did not occur in isolation.  As discussed above, Plaintiff has sufficiently pleaded that these investigative and disciplinary actions were taken by Defendant Richey in retaliation for Plaintiff's pursuit of written grievances concerning the validity and fairness of the 2019 Memorandum.") (citations omitted), report and recommendation adopted, 2023 WL 2725950 (C.D. Cal. Mar. 30, 2023); Gumienny v. McDowell, 2018 WL 6113084, at *8 (C.D. Cal. May 25, 2018) ("Discipline and preserving institutional order are legitimate penological goals *if they are the motivation* for an official act taken, and these goals will defeat a claim of retaliation.") (emphasis added); Henderson v. Lizarraga, 2021 WL 843461, at *22 (E.D. Cal. Mar. 5, 2021) ("Defendants' generic assertion of a legitimate correctional goal in deterring inmate theft falls short.  Undoubtedly, maintenance of order and dissuading inmates from stealing are legitimate correctional concerns.  But the Court concludes that genuine issues of material fact remain as to whether [Defendant] Moua charged Plaintiff with a rules violation in retaliation for Plaintiff's pursuit of a constitutionally protected right to complain of mistreatment at the hands of prison staff.  Summary judgment is thus inappropriate on Plaintiff's retaliation claim.") (citations omitted), report and recommendation adopted, 2021 WL 1193524 (E.D. Cal. Mar. 30, 2021).

Thus, there is evidence from which a fair-minded jury can find that Defendants took adverse actions against Plaintiff because Plaintiff engaged in protected conduct, and that there

1    was no legitimate penological justification for their actions.[9]

2        Defendants also make other arguments as to why they are entitled to summary

3    judgment, none of which are persuasive.

4        Defendants argue that "Plaintiff cannot seek judicial relief on his retaliation claim here

5    when California prison officials already resolved it."  (ECF No. 78, p. 15).  However,

6    Defendants do not cite any law in support of this proposition, nor is the Court aware of any.

7    Plaintiff has presented evidence that Defendants retaliated against him in violation of the First

8    Amendment, and the fact that Plaintiff may have later received relief through the grievance

9    process does not change this analysis.  Moreover, there is a dispute of fact regarding whether

10   Plaintiff received full relief in any event.  Plaintiff presented evidence that, because he was

11   found guilty of the Rules Violation Report he was removed as MAC Chairman, and he did not

12   get reinstated.

13       Defendants also argue that they are entitled to qualified immunity because they "did not

14   violate Plaintiff's First Amendment rights" and because Plaintiff did not "have a clearly

15   established right to be free from prison officials' disciplinary actions when he violated prison

16   regulations or policies."  (ECF No. 78, p. 18).

17       As discussed above, Plaintiff's evidence creates a genuine dispute of material fact

18   regarding whether Defendants retaliated against Plaintiff in violation of his First Amendment

19   rights.  Moreover, Defendants do not argue that they are entitled to qualified immunity even if

20   they punished Plaintiff because he engaged in protected conduct.  Nor does it appear that they

21   could.  As detailed above, it has long been established in this circuit that utilizing an otherwise

22   neutral process to punish an inmate because that inmate engaged in protected conduct is a

23   violation of that inmate's constitutional right, and there is evidence in this case that this is what

24   occurred.  Accordingly, Defendants are not entitled to summary judgment on the issue of

25   qualified immunity.

26       Based on the foregoing, the Court finds that Defendants' motion for summary judgment

27

28

---

[9] Defendants do not argue that there was no chilling effect.

should be denied in its entirety.

### ii.   *Plaintiff's Motion for Summary Judgment*

To begin, the Court notes that Plaintiff's motion for summary judgment is untimely. The dispositive motion filing deadline was October 18, 2022.  (ECF No. 67).  Defendants filed their motion on this date.  (ECF No. 78).  Plaintiff did not file his motion or ask for an extension of time to do so.  Instead, on November 15, 2022, Plaintiff filed a motion for an extension of time to file an opposition to Defendants' motion, which the Court granted.  (ECF Nos 82 &. 83).  Instead of filing an opposition, on January 24, 2023, Plaintiff filed a motion for summary judgment.  This motion was filed approximately three months after the dispositive motion deadline, and Plaintiff did not receive permission to file a late summary judgment motion.  Accordingly, the motion should be denied for this reason alone.

Moreover, there are genuine disputes of material fact precluding summary judgment in Plaintiff's favor.  According to Defendants' evidence, Defendant Bibb was informed that Plaintiff did not show up for a medical appointment.  (ECF No. 93-3, p. 2).  She "immediately went to the programming office to see if Plaintiff was there.  After [she] did not see Plaintiff, [she] asked the other inmates in the office about Plaintiff's whereabouts.  Because the inmates did not know, [she] put B Program down by ceasing all normal activities and operations therein in an attempt to locate and secure Plaintiff."  (Id.).  Moreover, "Plaintiff's unauthorized absence on November 22, 2017 breached facility security and disrupted B Program's normal operations.  In response, [she] duly took disciplinary actions against Plaintiff by issuing a rules violation report log number 3824429 for violating Title 15, section 3005(a), Delaying a Peace Officer in the Performance of Duties."  (Id. at 3).

According to Defendant Anderson, he "did not speak with Defendant Bibb regarding any inmate appeals that Plaintiff or other inmates had filed against Bibb, nor did she ask me to consider such appeals as [he] classified Plaintiff's rules violation report.  [He] did not consider any inmate appeals against Bibb or other Valley State Prison staff in classifying Plaintiff's rules violation report."  (ECF No. 93-4, p. 2).

According to Defendant Costa, she "determined Plaintiff's conduct to be a Division 'F'

offense under Title 15, section 3323(h)(9)-(10) because Plaintiff's unauthorized absence from his assigned programming area jeopardized facility security, disrupted Program B's normal operations, and constituted a refusal to work or participate in a program as ordered or assigned."  (ECF No. 93-5, p. 2).

Finally, according to non-Defendant Santoya, a correctional lieutenant who has been a CDCR employee since June 2003, "[a]n inmate missing from his assigned programming area, without prior approval or clearance with the prison staff, greatly jeopardizes the overall institutional security and safety.  This is because the inmate can be engaging in illicit or dangerous activities while hiding or attempting to escape.  A missing inmate also impedes prison staff from carrying out their duty to ensure that every inmate is safe and not facing any harmful situations while unsupervised."  (ECF No. 93-6, pgs. 1-2).

Thus, according to Defendants' evidence, Plaintiff was punished not because he engaged in protected conduct, but because he did not show up to a medical appointment and jeopardized institutional security.  As there is a genuine dispute of material fact, Plaintiff's motion for summary judgment should be denied.

## V.    RECOMMENDATIONS

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 78) be DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 89) be DENIED; and
3. Plaintiff's request for judicial notice (ECF No. 88) be GRANTED in part and DENIED in part.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights

on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 9, 2023**                    /s/ Erica P. Grosjean

                                                    UNITED STATES MAGISTRATE JUDGE